IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (E.D.N.Y.)

CIVIL #_____

RECEIVED
MAY 17 2004
PRO SE OFFICE

WEINSTEIN, J.
LEVY, M.J.

BRIEF IN SUPPORT OF APPLICATION FOR HABEAS CORPUS RELIEF
PURSUANT TO 28 U.S.C. §2241(a) AND REQUEST FOR CLASS
CERTIFICATION PURSUANT TO RULE 23(b)(1) AND RULE 29(b)(2)
OF THE FEDERAL RULES OF CIVIL PROCEDURE PURSUANT TO RULE
23(c)(1) & 23(c)(3)

MICHAEL SOLOMON, ET. AL.;    VS.    MICHAEL A. ZENK, WARDEN, ET. AL.;
          Petitioner(s)                              Defendant(s)

# TABLE OF CONTENTS

**STATUTES CITED:**

| | | |
|---|---|---|
| 18 U.S.C. §3626 (g)(2) | — | Definition Of Civil Action2 |
| 18 U.S.C. §3624(b) | — | Community Correction Centers |
| 18 U.S.C §3624(c) | — | Community Correction Centers |
| | | |
| 28 U.S.C. §1915(e)(1) | — | Appointment Of Counsel |
| 28 U.S.C. §2241(a) | — | Habeas Corpus — Jurisdiction |
| 28 U.S.C. §1361 | — | Writ Of Mandamus |
| 28 U.S.C. §§2283,2284 | — | Injunctive Relief |
| 28 U.S.C. §1391(e),(1)(2)(3) | — | Injunctive Relief |
| 28 C.F.R. #542.13(a) | — | Code Of Federal Regulation |
| | | |
| 5 U.S.C.A. §553, §551(4) | — | Administrative Procedure Act (APA) |
| Rule 23(b)(1) & 23(b)(2) | — | Federal Rules Of Civil Procedure Class Certification |
| Rule 23(c)(1) & 23(c)(3) | — | Federal Rules Of Civil Procedure Class Certification |
| Rule 65 | — | Federal Rules Of Civil Procedure |
| | | |
| M.C.A.A. §1, §2,(b), §3(a) | — | Model Class Action Act |

**CONSTITUTIONAL LAW CITED:**

Due Process Clause — Fifth & Fourteenth Amendment

Ex Post Facto Clause — Article 1, §9, Clause .3

**OTHER AUTHORITIES CITED:**

Prison Litigation Reform Act — (PLRA)  — 42 U.S.C.A. §1997e(a)

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d Section §3531

Charles H. Koch, Jr. 1 Admin. L. & Practice §4.11 (2d ed. 2003)

# TABLE OF CONTENTS

**TABLE OF CASES:**

1. Am. Mfrs. Mutual, Ins. Co. v. Sullivan, 143 L.Ed. 2d 130 (1999)

2. Ashkenazi v. Attorney General, 246 F. Supp. 2d 1 (D.D.C. 2003)

3. Aver v. Robbins, 117 S.Ct. 905, 137 L.Ed 2d (1997)

4. Byrd v. Moore, 252 F.Supp. 2d 293 (W.D.N.C. 2003)

5. Cal. Dept. of Corrections v. Morales, 131 L.Ed 2d 588 (1995)

6. Calder v. Bull, 1 L.Ed 648 (1798)

7. Cato v. Menifee, 2003 WL 22725524 2003 Wl (S.D.N.Y.) (Chin, J.)

8. Davis v. Fechtel, 150 F.3d 486 (5th Cir. 1998)

9. Dewitt v. Ventetoulo, 6 F.3d 32, 35 (1st Cir. 1993)

10. Ferguson v. Ashcroft, 248 F. Supp. 2d 564-65 (2003)

11. Gonzalez v. United States, 150 F. Supp. 2d 236 (D. Mass. 2001)

12. Gulf Oil Co. v. Bernard, 68 L. Ed. 2d 693 (1981)

13. Grier v. Hood , C.A. 9 (O.R.) 2002, 46 Fed. Appx. 433, 2002 WL 1997873

14. Greenfield v. Mehifee, 2003 No.#03-CV-8205 (KMW) (S.D.N.Y.)

15. Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000)

16. Howard v. Ashcroft, 248 F. Supp. 2d 518 (M.D. La. 2003)

17. Iacoboni v. United States, 251 F.Supp. 2d 1015 (D. Mass. 2003)

18. In Re Medley, 33 L.Ed. 835 (1890)

19. Johnson v. United States , 146 L.Ed. 2d 727 (2000)

20. Lynce v. Mathis, 137 L. Ed 2d 63 (1997)

21. McDonald v. Bureau of Prisons, No. 03-CV-235 (N.D. Ga. Feb. 14, 04)

22. Mallory v. United States, 2003 WL 1563764 (D. Mass. 3/25/03)

23. Martin v. Gerlinski, 133 F.3d 1076 (8th Cir. 1998)

24. Pearson v. United States, 265 F. Supp. 2d 973 (E.D. Wis. 2003)

25. Phillip Morris Inc. v. Angeletti, 752 A.2d 200 (2000)

# TABLE OF CONTENTS

## TABLE OF CASES:

26. Prows v. Federal Bureau of Prisons, 981 F.2d 466 (10th Cir. 1992)

27. Reno v. Koray, 132 L.Ed 2d 46 (1995)

28. Reyes v. Keane, 90 F.3d 676 (2d Cir. 1996)

29. Roberts v. United States, 65 L.Ed 2d 622 (1980)

30. Santana v. United States, 98 F.3d 752 (3rd Cir. 1996)

31. Supreme Tribe of Ben Hud v. Cauble, 65 L.Ed 673 (1921)

32. Tabron v. Grace, 6 F.3d 147, 153 (3rd Cir. 1993)

33. Tippon v. Federal Bureau of Prisons, 262 F. Supp. 2d 633 (D Md. 2003)

34. Utility Contractors Ass'n of New England, Inc. v. City of Worcester, 236 F. Supp. 2d 113, 117 (D. Mass. 2002)

35. United States v. Canavan, 2003 WL 245226 (D. Minn. 1/22/03) ·

36. United States v. Charles George Trucking Co., 823 F.2d 685 (1st. Cir.1987)

37. United States v. Coles, 101 F.3d 1076 (5th Cir. 1996)

38. United States v. Hodge, 802 F.2d at 61

39. United States v. LaBonte, 137 L.Ed 2d 1001 (1997)

40. United States v. Montoya, 967 F.2d 1,2, (1st Cir. 1992)

41. United States v. Rone, 743 F.2d 1169 (7th Cir. 1984)

42. United States v. Serpa, 251 F. Supp. 2d 988 (D. Mass. 2003)

43. United States v. Tkabladze, No.# CV-03-01152, CR 02-00434 (A) (5/16/03)

44. United States v. Tucker, 30 L.Ed 2d 592 (1972)

45. United States v. Turkette, 69 L.Ed 2d 246 (1981)

46. United States v. West, 2003 WL 1119990 (E.D. Mich. 2/20/03)

47. Vermont Agency of Natural Resources v. United States Ex. Release Stevens, 120 S. Ct. 1858 (2000)

48. Warder v. Shalala, 149 F.3d 82 (1st. Cir. 1998)

49. Zucker v. Menifee, 2004 WL 102779 (R.H.) (S.D.N.Y.)

# TABLE OF CONTENTS

PETITIONER'S APPENDIX:

## STATEMENT OF FACTS

On or before December 24, 2002, the Bureau of Prisons faxed a letter to all federal Judges announcing that designation of offenders to Community Confinement were forbidden as a matter of law, and that such policy of practicing and adopting judicial recommendations to place nonviolent inmates in such facilities and to place inmates transferring from prison to Community Confinement for the 'last six months of their sentence' would be abandoned. The author of this new practice being followed was the Department of Justice Office of Legal Counsel to the United States Deputy Attorney General, who on December 13, 2002, issued an opinion outlining why the old policy would no longer be followed.

As a result of that action the petitioner(s) and all similar situated class members have been denied the opportunity to fully participate in the Community Corrections Program, because the Bureau of Prison has erroneously applied the application of 18 U.S.C. §3621(b). The Bureau of Prisons has taken the position that the petitioner(s) named in this action and all similar situated class members are only entitled to 10% percent of the total term imposed by the Court as regards Community Correction Center placement. This erroneous interpretation has caused petitioner(s) due process rights to be violated, and has further violated the Administrative Procedure Act (APA), which renders such "reinterpretation invalid".

All named petitioner(s) did exhaust Administrative Remedies in this matter, notwithstanding that such is not required under 28 U.S.C.A. §2241. Petitioner(s) were denied all relief by the Warden on _____,2004.

The petitioner(s) now move for relief before this Court.

# TABLE OF CONTENTS

LEGAL ARGUMENTS:

(A)  VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT'S (APA) NOTICE AND COMMENT PROCEDURAL PREREQUISITES RENDERS THE BUREAU OF PRISONS ADOPTION OF SUCH "NEW RULE" INVALID AND UNENFORCEABLE BY LAW, BECAUSE SUCH VIOLATES THE DUE PROCESS CLAUSE TO THE UNITED STATES CONSTITUTION AND 5 U.S.C §§ 551 et seq.

(B)  THE EX POST FACTO CLAUSE FORBIDS RETROACTIVE APPLICATION OF THE BUREAU OF PRISONS POLICY CHANGE TO PRISONERS WHOSE OFFENSE CONDUCT PREDATED THE CHANGE BASED ON PROTECTIONS UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.

(C)  BUREAU OF PRISONS REINTERPRETATION OF 18 U.S.C. §3624(c) LIMITING EACH PRISONERS COMMUNITY CORRECTION CENTER PLACEMENT TO TEN PERCENT OF THE TERM IMPOSED BY THE SENTENCING COURT IS AN INCORRECT INTERPRETATION OF THE LAW, AND VIOLATION OF THE DUE PROCESS CLAUSE TO THE UNITED STATES CONSTITUTION.

(D)  BUREAU OF PRISONS "NEW POLICY" AND REINTERPRETATION OF FEDERAL STATUTE 18 U.S.C. §3621, LIMITING THE BUREAU OF PRISONS DISCRETION TO PLACE OFFENDERS WHEREEVER IT DEEMS APPROPRIATE IS UNCONSTITUTIONAL AND UNLAWFUL IN VIOLATION OF THE CONSTITUION UNDER DUE PROCESS CLAUSE AND EX POST FACTO LAWS.

(E)  CERTIFICATION OF CLASS ACTION SHOULD BE GRANTED BASED ON STANDING BEING ESTABLISHED ADEQUATELY.

(F)  PRISON LITIGATION REFORM ACT'S (PLRA) EXHAUSTION REQUIREMENT DOES NOT APPLY TO PRISONER'S HABEAS PETITION WHICH CHALLENGES BUREAU OF PRISONS POLICY, CONCERNING MANNER, LOCATION, OR CONDITIONS OF SENTENCE'S EXECUTION, NOT CONDITIONS OF CONFINEMENT.

**(A) VIOLATION OF THE ADMINISTRATIVE PROCEDURE
ACT'S (APA) NOTICE AND COMMENT PROCEDURAL
PREREQUISITES RENDERS THE BUREAU OF PRISONS
ADOPTION OF SUCH "NEW RULE" INVALID AND
UNENFORCEABLE BY LAW, BECAUSE SUCH VIOLATES
THE DUE PROCESS CLAUSE TO THE UNITED STATES
CONSTITUTION AND 5 U.S.C. §§ 551 et seq.**

The facts are not in dispute. The Bureau of Prisons adopted its
"new rule" regarding Community Confinement without engaging in the
rigorous "notice and comment" procedures set forth in the A.P.A.,
5 U.S.C. § 553. It is equally indisputable that, unless an agency
rule is of a type excepted from th A.P.A., violation of these pro-
cedural prerequisites renders it invalid. See - <u>Aver v. Robbins</u>, 117
<u>S.Ct.</u> 905, 137 <u>L.Ed</u> <u>2d</u> 79 (1997); <u>Ferguson v. Ashcroft</u>, 248 <u>F. Supp.</u>
<u>2d</u> 564-65 (2003); <u>Iacobni v. United States</u>, 251 <u>F. Supp.</u> <u>2d</u> 1015
(D. Mass. 2003); <u>Mallory v. United States</u>, 2003 <u>WL 1563764</u> (D. Mass.
March 25, 2003).

The A.P.A. broadly defines "Rule" to include "the whole or part
of an agency statement of general or particular applicability and
future effect designed to implement, interpret, or prescribe law or
policy." 5 U.S.C § 551(4). Defendant(s) "new rule" is not exempt from
notice and comment procedures under <u>5</u> U.S.C. § <u>553(b)(3)(B)</u>. The facts
clearly show that this "new rule" is a substantive (or legislative
rule) because such was issued by an agency pursuant to statutory
authority, and which implement the statute .... such rules have the
force and effect of law. See - Charles H. Koch, Jr. 1 Admin. L. & Prac.
§ 4.11 (2d ed. 2003) ("[L]egislative rules are binding on courts as an
extension of legislative power"). It is submitted that the new policy
places sweeping limitations on the BOP's discretion and such limita-
tions have binding legal effect on both BOP personnel and third parties
(Judges and Inmates) alike.

A "rule with the force and effect of law that is binding not only

1

on the agency and regulated parties, but also on the Court — is
by definition a substantive rule". See — <u>Warder v. Shalala</u>, 149 <u>F.3d</u>
73 (at 82) (1st Cir. 1998). In determining whether a rule carries the
"force of law", the "critical factor" is "whether it leaves the agency
officials free to exercise discretion in any individual case" or in-
stead requires a uniform, predetermined outcome that admits of no
exception.

The law supports the facts. The BOP has illegally revisited the
statutory provision of <u>18</u> U.S.C. §<u>3624(c)</u> and §<u>3621</u> and attempted to
reshape such statutory provision through an administrative statement
of lawmaking. Our Court spoke to the issue in <u>Mallory v. United State</u>,
2003 <u>WL 1563764</u> (D. Mass. March 25, 2003), by stating in part:

> "application of a general legislative rule
> is involved in the attempted redesignation
> of defendants from community confinement
> to secure facilities. This is no mere effort
> at interpretive guidance but rather a rule-
> making exercise designed to reshape the scope
> of a statutory provision" ... (omitted in part)
> <u>Mallory</u>, 2003 <u>WL</u> <u>at</u> *2;

Irrespective of the BOP's characterization of its policy, the
new policy has the force of law and is not merely interpretive ...
the new policy is not flexible and does not permit BOP to exercise
any discretion. See <u>Martin v. Gerlinski</u>, 133 <u>F.3d</u> 1076 (8th. Cir. 1998)
(holding that a BOP definition on "nonviolent offense" was legislative
because it did not merely <u>explain</u> statutory meaning but "expanded" the
reach of a regulation to bar offenders from early release).

The new rule is a sustantive (or legislative rule) because such
"new rule" affords parties no opportunity for meaningful input and
simultaneously insists that that the rule admits of no exception and
is legally binding on the BOP, defendants, and Judges.

Petitioner(s) ask that the court find that the "new rule" is
invalid and unenforceable because it violates the Administrative Proc-

Cont .....

edure Act's Notice and Comment Procedural Prerequisites as set forth
in 5 U.S.C. § 553 and further violates the Due Process Clause to the
United States Constitution.

## LEGAL ARGUMENT

(B) THE EX POST FACTO CLAUSE FORBIDS RETROACTIVE
APPLICATION OF THE BUREAU OF PRISONS POLICY
CHANGE TO PRISONERS WHOSE OFFENSE CONDUCT
PREDATED THE CHANGE BASED ON PROTECTIONS
UNDER THE DUE PROCESS CLAUSE OF THE UNITED
STATES CONSTITUTION.

Section 9 of Article I of the United States Constitution, which
enumerates the powers of Congress, provides that "no Bill of Attainder
of ex post facto law shall be passed". The Supreme Court has long held
that an ex post facto law is one that "retroactively alter[s] the
definition of crimes or increase[s] the punishment for criminal acts".
Cal. Dept of Corrections v. Morales, 131 L.Ed. 2d 588 (1995) (citing,
inter alia, Calder v. Bull, 3 U.S. (3 Dall.) 386, 391. 1 L.Ed. 648
(1798). To succeed, an ex post facto challenge must show that the law
in question "applies to conduct completed before its enactment" and
that "it raises the penalty from whatever the law provided when he
acted." See – Johnson v. United States, 146 L.Ed. 2d 727 (2000).

Petitioner(s) submit that they are suffering an increase in their
punishment which is punitive because the prgression from a sentence
with eligibility for possible community confinement to one without
the remotest possibility of such eligibility constitutes a significant
increase in the measure of punishment for the offenses they pled guilty
to. The Ex Post Facto Clause not only forbids retroactive gestures that
make quantitative adjustments to criminal penalties, but also rejects
retroactive application of laws mandating certain actions on prisoners.
See – In Re Medley, 33 L.Ed. 835 (1890). Morales, supra., is explained
and distinguished from this matter. Here there is no speculation, con-

3

jecture, or attenuated chain of cause and effect in this matter.
Here the conclusion is easily reached, that the Department of
Justice's clampdown on BOP discretion as to place of imprisonment
and as to when such can be effectuated increases punsihment for
prisoners. See - Iacaboni, 251 F. Supp. 2d at 1041 (observing that
the BOP's policy change presents a situation "entirely different"
from that in Morales - the risk of increased punishment is not at all
speculative"). The BOP had a clear and consistent policy of accepting
and considering judicial recommendations at the outset of the sentence
and releasing prisoners into such facilities six months before the end
of their terms. See - Ashkenazi, 246 F.Supp. 2d at 7. The elimination
of that eligibility or consideration for eligibility to such Community
Correction Center once such policy had been established notwithstanding
that it came with no gurantee - was sufficient to offend ex post facto
principles. This case is identical to Lynce v. Mathis, 137 L.Ed. 2d 63
(1997), where the Supreme Court found that the retroactive cancellation
of early time credits violated the Ex Post Facto Clause. The Court said
that: "The fact that a prisoner was not necessarily entitled to the
credits when he pleaded guilty made no difference to the Court. The new
policy "made ineligible for early release a class of prisoners who were
previously eligible". Id at 446, 117 S.Ct. 891. Although, a prisoner
cannot level a due process challenge to the BOP policy reversal on the
ground that he was unlawfully deprived of a liberty interest in
Community Confinement, the law does recognize a due process right not
to be sentenced on false information. Roberts v. United States , 65 L.
Ed. 2d 622 (1980); United States v. Tucker, 30 L.Ed 2d 592 (1972); also
United States v. Montoya, 967 F.2d 1, 2 (1st. Cir. 1992) (recognizing
that the accuracy of information before the sentencing judge bears on
the "fundamental fairness" of the proceeding); United States v. Rone,
743 F.2d 1169, 1171 (7th Cir. 1984) ("Convicted defendants, including

4

those who plead guilty, have a due process right to a fair sentencing procedure which includes the right to be sentenced on the basis of accurate information.") At least eight Courts have found in published decisions this doctrine to be appropriate to apply in the present situation, where a trial Court sentenced with the understanding — and often with express assurance from BOP representatives — that a prisoner would be eligible for community confinement at some point prior to the last (10) percent of his term. See - Iacaboni, 251 F. Supp. 2d at 1020-21 (finding that the BOP's sloughing of its discretion violated due process in sentencing); Cutler, 241 F. Supp. 2d at 25-26 (citing Dewitt v. Ventetoulo, 6 F.3d 32, 35 (1st Cir. 1993). Other Courts have upheld due process challenges. See, Pearson, 265 F. Supp. 2d at 979-83; Tipton, 262 F. Supp. 2d at 637; Byrd, 252 F. Supp. 2d at 303; West, 2003 WL 1119990, at *4. Petitioner(s) now submit that Due Process principles provide an independent ground to challenge the BOP's policy reversal for those prisoners whose sentences took the existing policy into account. The time triggers of Ex Post facto and Due Process Clause protection differ in this context. The Ex Post Facto Clause protects a prisoner from changes in the law that occur after he commits the crime. The BOP policy change offends due process principles insofar as the altered conditions of a prisoner's sentence were not known to the sentencing Court. Where a defendant's offense conduct predated the policy change but his plea and sentencing occurred after the change, only ex post facto principles bar retroactive application of the BOP policy. Thus due process concerns are implicated in this matter.

# LEGAL ARGUMENT

(C) BUREAU OF PRISONS REINTERPRETATION OF 18 U.S.C.
§3624(c) LIMITING EACH PRISONERS COMMUNITY
CORRECTION CENTER PLACEMENT TO TEN PERCENT OF THE
TERM IMPOSED BY THE SENTENCING COURT IS AN INCORRECT
INTERPRETATION OF THE LAW, AND VIOLATION OF THE DUE
PROCESS CLAUSE TO THE UNITED STATES CONSTITUTION.

Statute, 18 U.S.C. §3624(c), outlines what steps the BOP is re-
quired to take at the end of an imprisonment term to ease a prisoner
back into society – and when it must take them. Section §3624(c)
provides as follows:

> "The Bureau of Prisons shall, to the extent practicable,
> assure that a prisoner serving a term of imprisonment
> spends a reasonable part, not to exceed six months, of
> the last 10 per centum of the term to be served under
> conditions that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the prisoner's
> re-entry into the community. The authority provided by
> this subsection may be used to place a prisoner in home
> confinement."

18 U.S.C. §3624(c), supports the fact that imprisonment means
being in the custody of the Bureau of Prisons, rather than in any
specific locale. It includes home confinement – a condition
substantially less coercive than community confinement. Among the
array of measures that the Bureau of Prisons may take in discharging
its duty to help transition prisoners back into society at the end
of their terms. The Bureau of Prisons now alleges that it can no
longer follow the statute because its past reliance on such was an
erroneous interpretation of how such statute should be enforced or
applied to prisoner's. The Bureau of Prisons decision is in direct
contradiction of the principles of statutory construction, and exist-
ing case law. A court is not supposed to consult legislative history
where, as here, the meaning of a statute is clear from its plain
language. See – United States v. Charles George Trucking Co., 823
F.2d 685, 688-89 (1st. Cir. 1987) ("In the case before us, the

statutory command is clear as a bell - and its melody is unmuffled by any discordant legislative undertone." ) (Citing <u>United States v. Turkette</u>, 68 <u>L.Ed.</u> 2d 246 (1981). The plain language of §3624(c) places no curbs on Bureau of Prisons discretion as to place of confinement prior to the last six months or 10% percent of confinement. The provision's purpose is not to set strict conditions on when the Bureau of Prisons can designate a prisoner to community confinement. The statute in fact burdens the Bureau of Prisons with a duty (albiet a "qualified" one). <u>Prows v. Federal Bureau of Prisons</u>, 981 <u>F.2d</u> 466, 469 (10th Cir. 1992); <u>Howard</u>, 248 <u>F. Supp.</u> <u>2d.</u> <u>at</u> 544; <u>Ferguson v. Ashcroft</u>, 248 <u>F. Supp.</u> <u>2d</u> <u>at</u> 572. It "shall" take steps to "<u>assure</u>" that prisoners serve the last 10 percent of their prison terms under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community". What one statute, §3624(c), requires and another §3621(b), allows the Bureau of Prisons to do are two separate matters. It is illogical and inappropriate to infer that where the mandate that §3624(c) places upon the Bureau of Prisons at the end of a prisoner's sentence stops, a limitation on its discretion for the period before that begins. Three of our Circuit Court Judges (2nd Circuit) Southern District of New York have issued opinions which conform with the most recent caselaw out of other District Courts in other Circuits. On October 30, 2003, the Hon: Kimba Wood announced in <u>Greenfield v. Meni-fee</u>, <u>No.03-CV-8205</u> (KMW), that the Bureau of Prisons should reconsider the petitioner's halfway house placement "in good faith". This required the Bureau of Prisons, specifically, the Warden at FPC Otisville (N.Y.) to undertake a fesh and open-minded review consistent with its past practices. On February 3, 2004, the Bureau of Prisons announced that it was sending "Greenfield" to a halfway house for more than his ten percent

date of (60 days). In fact, "<u>Greenfield</u>" received double that amount
of time as alleged was allowed under the "<u>new rule</u>". In the second,
case which was announced on the same date as Judge Woods decision,
Judge Richard Holwell announced his agreement with statutory arguments
advanced by FPC Otisville inmate Abraham Zucker challenging the
Bureau of Prison's halfway house placement eligibility rules. See –
<u>Zucker v. Menifee</u>, 2004 <u>WL</u> 102779 (SDNY). The other favorable decision
in the Southern District of New York is <u>Cato v. Menifee</u>, 2003 <u>WL</u> 22725–
524 (SDNY 2003) (Chin, J.)

Numerous courts across the Country have found the new Bureau of
Prisons policy to be legally invalid on a variety of grounds. See –
<u>Iacaboni v. United States</u>, 251 F. Supp. 2d 1015 (D. Mass. 2003)
(Ponser, J.); <u>Pearson v. United States</u>, 265 F. Supp. 2d. 973 (E.D.
Wis. 2003); <u>Tipton v. Federal Bureau of Prisons</u>, 262 F. Supp. 2d.
633 (D. MD. 2003); <u>Byrd v. Moore</u>, 252 F. Supp. 2d. 293 (W.D.N.C. 2003);
<u>United States v. Serpa</u>, 251 F. Supp. 2d 988 (D. Mass. 2003) (Young, CJ);
<u>Ferguson v. Ashcroft</u>, 248 F. Supp. 2d. 547 (M.D. La. 2003); <u>Howard v.
Ashcroft</u>, 248 F. Supp. 2d 518 (M.D. La. 2003); <u>Ashkenazi v. Attorney
General</u>, 246 F. Supp. 2d 1 (D.D.C. 2003); <u>United States v. Tkabladze</u>,
No. <u>CV-03-01152,</u> CR <u>02-00434(A)</u> (CD. Cal. May 16, 2003) (slip op.);
<u>Mallory v. United States</u>, 2003 <u>WL</u> 1563764 (D. Mass. Mar. 25, 2003);
(Woodlock, J.); <u>United States v. West</u>, 2003 <u>WL</u> 1119990 (E.D. Mich. Feb.
20, 2003); <u>McDonald v. Federal Bureau of Prisons</u>, <u>No.</u> 03-CV-235 (N.D.
Ga. Feb. 14, 2003); <u>United States v. Canavan</u>, 2003 <u>WL</u> 245226 (D. Minn.
Jan. 22, 2003). The <u>Iacaboni</u> Court stated that the "well established
practice of the Bureau of Prisons of placing certain offenders in
community confinement to serve some or all of their terms of imprison-
ment "was not and is not, even remotely unlawful". 251 F. Supp. 2d at
1017-18. Second, the Bureau of Prison's manner of adopting this funda-

mental change, even assuming it had substantial merit, was improper under the Administrative Procedure Act. Id at 1018. Thrid, the retroactive application of this policy violates the Constitution. See id. Offender Classification and assignment decisions made pursuant to this policy are therefore invalid, and the Bureau of Prisons retains the discretion to employ community confinement as it always did prior to December of 2002. All that §3624(c) suggests is that whatever the conditions of confinement were prior to the last 10 percent of a prisoner's term (not to exceed six months), the remaining period is to be served under pre-release conditions.

Petitioner(s) have proven that in all three categories (1) **Individuals who pleaded guilty or were convicted prior to the new BOP policy; (2) Individuals who pleaded guilty or were convicted prior to the new policy, but were sentenced afterward; and (3) Individuals comprised of inmates approaching the end of their imprisonment terms who had been designated for a community confinement facility, pursuant to longstanding BOP policy, only to have their designation abruptly changed,** have all fulfilled the legal prerequisites necessary to make them parties to this Class Action. Petitioner(s) now ask that the Court find that their right under the Due Process and Ex Post Facto Clause has been violated by the defendant(s) sudden and unexpected actions in issuing a "new Policy" without proper authority under the law to do so.

(D) BUREAU OF PRISONS "NEW POLICY" AND REINTERPRETATION
OF FEDERAL STATUTE 18 U.S.C. §3621, LIMITING THE
BUREAU OF PRISONS DISCRETION TO PLACE OFFENDERS
WHEREVER IT DEEMS APPROPRITAE IS UNCONSTITUTIONAL
AND UNLAWFUL IN VIOLATION OF THE CONSTITUTION UNDER
DUE PROCESS CLAUSE AND EX POST FACTO LAWS.

18 U.S.C. §3621(b) does not support the government's position at
all. The government bases its sudden change to the "new" policy on
its reinterpretation of the statute that empowers the Bureau of
Prisons in its custody of federal prisoners, 18 U.S.C. § 3621(b),
and on the Sentencing Guidelines referred to therein. The Bureau of
Prisons is constitutionally wrong.

Statute 18 U.S.C. §3621(b) pertains generally to the Bureau of
Prison's discretion over "place of imprisonment" and provides in
pertinent part:

> The Bureau of Prisons shall designate the place of the
> prisoner's imprisonment. The Bureau may designate any
> available penal or correctional facility that meets
> minimum standards of health and habitability established
> by the Bureau, whether maintained by the Federal Govern-
> ment or otherwise ... that the Bureau determines to be
> appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the
> sentence;
>
> (A) concerning the purpose for which the sentence
> to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional
> facility as appropriate; and
>
> (5) any pertinent policy statement issued by the
> Sentencing Commission pursuant to §994(a)(2) of
> title 28.

The Bureau of Prisons takes the position that the discretion §3621(b)
affords the Bureau of Prisons in determining "place of imprison-
ment" does not include the discretion to transfer a prisoner to
community confinement facilities – neither pursuant to a judicial

10

recommendation at sentencing, nor at the end of a prisoner's term. Prison, it appears, necessarily means a very specific place – with barbed wires and absolute constraints on liberty- and nothing else.

No such limitation on Bureau of Prison's discretion is apparent on the face of §3621(b). The statute prescribes that the facility be "penal or correctional" and that it meet minimum habitability standards. Community confinement centers have historically been viewed to satisfy the statutory conditions. Iacaboni, 251 F. Supp. 2d at 1024-25. Simply stated, "[c]ommunity confinement constitutes one form of imprisonment, and a community confinement facility is a "penal or correctional facility". Id. at 1025.

The definition in §3621(a), states that "imprisonment" means ...

> A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behaviour pursuant to the provisions of section 3624.

The statute makes clear that it is not place, but custody, that defines imprisonment – a conceptual distinction that is consistent with long accepted views on this subject. See – Reno v. Koray, 132 L.Ed. 2d 46 (1995) (recognizing that time spent in community con- finement subject to Bureau of Prisons custody entitles a prisoner to sentencing credit, while community confinement on pretrial release does not, because "[u]nlike defendants 'released' on bail, defendants who are detained or sentenced always remain subject to the control of the Bureau").

The term "imprisonment" does not require that all those in custody of the Bureau of Prisons must be confined in structures that resemble prisons. Section 3621 certainly does not impose such a limitation on the Bureau of Prison's discretion.

Furthermore, any argument that would attempt to rely on the

Sentencing Guidelines to cabin the Bureau of Prison's discretion in place of confinement would be flawed and fatally defective, because when statutes conflict with other specific sections of the Sentencing Guidelines, the guidelines would have to yield. As Judge Ponser observed in Iacaboni, "statutes trump guidelines, not vice versa". Iacaboni, 251 F. Supp. 2d at 1024 (citing the Supreme Court's "emphatic" holding in United States v. LaBonte, 137 L.Ed.2d 1001 (1997), that notwithstanding the considerable authority given to the Sentencing Commission, "it must bow to the specific directives of Congress"); See also Pearson, 265 F. Supp. 2d. at 982 ("The Bureau of Prison's auhtority to place prisoners is set forth by Congress in 18 U.S.C. §3621(b), not by the Sentencing Commission in the guidelines".)

Second, the Sentencing Guidelines are binding only on the Courts; they have nothing to say about the Bureau of Prison's use of its agency discretion as custodian of federal prisoners. Iacaboni, 251 F. Supp. 2d at 1034. In fact, as Judge Ponser noted, §3621(b) gives an itemized list of factors the Bureau of Prisons is to consider in determining an appropriate place of confinement. One of these is "any statement by the court that imposed the sentence recommending a type of penal or correctional facility as appropriate", 18 U.S.C. §3621(b)(4)(B). At theend of the list of issues that the Bureau of Prisons is to consider are policy statements of the Sentencing Commission, Id. §3621(b)(5). Guidelines do not govern place of confinement ~ they never did and never will. They are about judicial sentencing. During the "imprisonment" component of his term, the offender, officially within the custody of the Bureau of Prisons, 18 U.S.C. 3621(a), is answerable to the Bureau of Prison for his conduct. The Bureau of Prisons can, in its discretion, withdraw him

12

from halfway house and transfer him to a higher-security facility.

Other statutes - not Guidelines - contemplate resort to Community Confinement as a form of imprisonment. Iacaboni, 251 F.Supp. 2d at 1029 (citing 18 U.S.C. §3622(b) (allowing imprisoned inmates to "participate in a training or educational program in the community"); §3622(c) (authorizing imprisoned inmates to "work at paid employment in the community while continuing in official detention at the penal or correctional facility").

Therefore, petitioner(s) submit that the "new policy" being followed by the Bureau of Prisons is violative of their Rights to Due Process under the United States Constitution, and in violation of Ex Post facto Laws because the adoption of such "new policy" is unlawful once such change stripped the Bureau of Prison's of their discretion under the statute(s).

# LEGAL ARGUMENT

### (E) CERTIFICATION OF CLASS ACTION SHOULD BE GRANTED BASED ON STANDING BEING ESTABLISHED

The ultimate determination of whether a class action is appropriate turns on the existence and extent of common questions of law and fact. A community of interest in the questions of law or fact affecting the members of the class is essential to the maintenance of a class action. A class action is maintainable if there are questions of law or fact common to the class. See - <u>Gulf Oil Co. v. Bernard</u>, 68 <u>L.Ed 2d</u> 693 (1981) ("Fed. R. Civ. P. <u>23</u> expresses a policy in favor of having litigation in which common interests, or common questions of law or fact, prevail disposed of, where feasible, in a single lawsuit).

The putative class representatives bear the burden of proving all criteria necessary for class certification, the party need not prove separate facts supporting each requirement; rather the party's burden is to establish those underlying facts sufficiently from which the Court can make necessary conclusions and a discretionary determination. Once the proponent of the class has made a prima facie showing that the prerequisites of the class action statute or rule are met, the burden of producing evidence shifts to the opponent, although the proponent retains the burden of persuasion.

Petitioner's now submit that they have standing for certification of the class, based on the following:

## SUBJECT MATTER JURISDICTION

**Standing:**

Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases and controversies'. The constitutional power of federal courts cannot be defined, and indeed

14

Standing:

has no substance, without reference to the necessity to adjudicate the
legal rights of litigants in actual controversies. Article III mandates
that "the party who invokes the Court's authority [must] show that
he personally suffered some actual or threatened injury as a result of
the putatively illegal conduct of the defendant". Current decisions
express the Article III requirements by demanding a 'personal stake'
that will make the plaintiff an effective litigant; this quest is
pursued by demanding an injury in fact that has been caused by the
challenged conduct and that can be remedied by a judicial decree.
See - Wright, Miller & Cooper, Federal Practice and Procedure: Juris-
diction 2d Section 3531. Citing - Vermont Agency of Natural Resources
v. United States Ex. Rel. Stevens, 120 S.Ct. 1858, 1861-1862 (2000),
holding that "[To] satisfy Article III's standing requirements, a
plaintiff must show (1) he has suffered an injury in fact, that is (a)
concrete and particularized and (b) actual or imminent, not conjectural
or hypothetical; (2) the injury is fairly traceable to the challenged
actions of the defendant; and (3) it is likely, as opposed to merely
speculative, that the injury will be redressed by a favorable decision.

In this instant matter, the petitioner(s) have alleged a "injury
in fact that is concrete and particularized and actual or imminent,
not conjectural or hypothetical". Each member and petitioner of the
class is suffering immediate, irraparable, and threatened injury as a
result of the challenged action of the sort that would make out a
justiciable case, and each claim is common to the entire membership,
and shared by all petitioner(s) and class members in equal degree.

Petitioner(s) harm is as follows:

> (1) Violation of Ex Post Facto Clause - U.S.C.A.
> Art. 1, §9, cl.3 - Retroactive Application of
> Policy Change 18 U.S.C. §3624(c) & §3621 is a
> violation of Due Process under the Constitution

Standing:

(2) Violation of the Administrative Procedure Act's
Notice and Comment Procedural Prerequisites
Renders the "new" rule adoption Invalid and
violates petitioner(s) rights to Due Process
under the United States Constitution and
5 U.S.C.A. §553.

(3) Petitioner(s) and Class Members were subjected
to improper and unlawful policy change in
violation of their Fourteenth Amendment right
to Due Process of law under the United States
Constitution.

(4) Petitioner(s) are being held in confinement
beyond their expected and anticipated six month
release date, as outlined in the statute of 18
U.S.C. §3624(c) and §3621.

(5) Further incarceration by Petitioner(s) now
eligible for Community Corrections extends such
prisoner(s) terms past the "prior to the last
Ten (10) percent" as outlined in 18 U.S.C. §3624(c).

(6) Petitioner(s) are suffering irreparable harm
because each petitioner would have been placed in
Community Corrections earlier than now scheduled
under the 'reinterpreted policy, and application
of the 'new' Bureau of Prisons policy delayed the
petitioner(s) entry into Community Confinement in
A Community Correction Center (Halfway House),
which causes the extension of petitioner(s) release
or "consideration" for release to be in violation
of the procedural due process provided by the law
and Constitution of the United States.

(7) Each petitioner has suffered harm directly by the
exclusion from Community Correction Center of the
time eligibility that is provided for by statute
and policy statement.

(8) Each petitioner has shown 'individually and
collectively' the existence of injury to them-
selves and the similarly situated class members
as to rise to the level of sufficient immediacy
and ripeness to warrant judicial intervention.

The rules of standing, whether as apsects of Article III case-
or-controversy requirement or as reflections of prudential considera-
tions defining and limiting the role of the courts, are threshold
determinants of the propriety of judicial intervention. It is the
responsibility of the complainant clearly to allege facts demonstrating

## Standing:

that he is a proper party to invoke judicial resolution of the Court's remedial powers.

Petitioner(s), now state that apart from any statutorily created right, the asserted harm to themselves and the class members gives them standing to bring this matter as a class action. Each member is suffering directly, personally, and collectively as a result of the actions of the defendant(s). Which makes the harm to petitioner(s) and the class members sufficiently direct to satisfy the case or controversy requirement of Article III. Prudential considerations strongly counsel for granting petitioner(s) standing to prosecute this action. Petitioner(s) have met the threshold requirement.

## NUMEROSITY HAS BEEN ESTABLISHED:

Because of the numerous amount of similar situated class members a class action is the proper procedure to facilitate litigation because the number of persons having an interest in this lawsuit is so great that it is impractical to join them all as parties. See - **Fed. R. Civ. P. 23(b)(1)(A)**. In this matter, petitioner(s) have satisfied the numerosity requirement for certification of a class action, because petitioner(s) have adequately defined the class, and have established that it is so numerous that joinder of all members is impracticable. See - **Fed. R. Civ. P. 23(b)(1)(B)**.

Petitioner(s) now ask that the Court exercise its practical judgment, given the facts of the particular case. There is no bright-line rule as to how many class members are required to satisfy the numerosity requirement for certification, and defining the class size is not a prerequisite to class certification. See - **Philip Morris Inc. v. Angeletti**, 752 A.2d 200 (2000) ("Plaintiffs need not state a number with specificity, to meet "numerosity" requirement for class action,

## Numerosity Has Been Established:

as good faith estimate is ordinarily sufficient") There is no set
number of class members which must be shown to warrant maintaining
action as class action.

Petitioner(s) submit that the parties interested in the subject
are so numerous that it would be impracticable to join them without
long delays and inconveniences which would obstruct the purposes of
justice. When such is the case, Courts of equity have long recognized
the right of one or a few of such persons to sue for themselves and
all others similarly situated, and thus represent the entire class or
body of interested persons. See - <u>Supreme Tribe of Ben Hur v. Cauble</u>,
65 <u>L.Ed.</u> 673 (1921).

## COMMONALITY HAS BEEN ESTABLISHED:

The commonality requirement for class certification is generally
given a permissive application, and if there is a common nucleus of
operative facts, or a common liability issue, the rule is satisfied.
The commonality requirement does not require that all, or even most
issues be common, nor that common issues predominate, but only that
common issues exist. An issue of law or fact should be deemed "common"
for puposes of the commonality requirement, only to the extent its
resolution will advance the litigation of the entire case.

Petitioner(s) submit that class action is proper because
questions of law and fact are common to all members of the class and
predominate over any questions that would affect individual members,
and that the issue's and legal arguments presented by petitioner(s)
are so tightly interwoven in the dispute that they directly affect its
resolution. Petitioner(s) now submit that the existence of common

## COMMONALITY HAS BEEN ESTABLISHED:

questions of law or fact constitutes a sufficient community of interest
to sustain a class action, because the common questions are sufficiently
important to permit adjudication in a class action, rather than in a
multiplicity of separate suits. In this instant matter, it is not
necessary for each member of the class to establish his right to re-
cover against the defendant(s) on facts peculiar to each member's own
case, since there are important issues to be determined on behalf of
the entire group, which all relate to the same conduct and same relief
being requested to cure such unlawful conduct. Petitioner(s) ask that
the Court determine that commonality has been established because a
"sufficient community of interest exists" between the petitioner(s)
and the class.

## TYPICALITY REQUIREMENT HAS BEEN MET:

Petitioner(s) submit that they have met the prerequisites to
maintain a class action because the claims and/or defenses of the
representative parties are typical of the claims or defenses of the
class. The typicality requirement focuses on the interests of the
class representatives. It is now submitted that petitioner(s) have
met the essence of the typicality requirement by showing that the
relationship between the injury to the class representatives and the
conduct affecting the entire class of plaintiffs is sufficient for the
Court to properly attribute a collective nature to the challenged
conduct. Petitioner(s) claims satisfy the typicality prerequisites
because it arises from the same event, practice, or course of conduct
from which the claims of other class members arise, and are based on
the same legal theory. Furthermore, the typicality requirement is met
because the same unlawful conduct was directed at and affected both

19

## TYPICALITY REQUIREMENT HAS BEEN MET:

the class members and the plaintiff. A careful review by the Court
of the defendant(s) conduct should be sufficient to establish a
prima facie determination by the Court that the claims or defenses
of the representative parties are typical of the claims or defenses
of the class.

Petitioner(s) now state that they have demonstrated that the
members of the class have the same or similar grievances as themselves
(that is, named representatives have established the bulk of the
elements of each class member's claim when they proved and presented
their claim to the Court). Petitioner(s) now ask that the Court rule
that the typicality requirement has been met in this matter, because
all the members of the purported class desire the same outcome of the
action that their representatives desire.

Petitioner(s) requests that the Court certify this matter as a
class action because the requirements relating to the commencement of
a class action has been satisfied under the **Model Class Action Act**.
See – **M.C.A.A.** §**1**; and, a class action should be permitted for the
fair and efficient adjudication of the controversy – **M.C.A.A.** §**3(a)**;
an lastly, because the representative parties fairly and adequately
will protect the interest of the class. See – **M.C.A.A.** §**2(b)**.

For the above and all the herein reasons mentioned, the now
named petitioner(s) request that this matter be granted class action
certification and status.

# LEGAL ARGUMENT

**(F) PRISON LITIGATION REFORM ACT'S (PLRA) EXHAUSTION REQUIREMENT DOES NOT APPLY TO PRISONER'S HABEAS PETITION WHICH CHALLENGES BUREAU OF PRISONS POLICY, CONCERNING MANNER, LOCATION, OR CONDITIONS OF SENTENCES EXECUTION, NOT CONDITIONS OF CONFINEMENT.**

---

Petitioner(s) submit that they are not required statutorily under the Prison Litigation Reform Act (PLRA) to exhaust their Administrative remedies before filing Habeas Corpus petition under 28 U.S.C. § 2241. See Grier v. Hood, C.A. 9 (OR.) 2002, 46 Fed. Appx. 433, 2002 WL 1997873; Following, Reyes v. Keane, 90 F.3d 676 (2d Cir. 1996); Santana v. United States, 98 F.3d 752 (3rd Cir. 1996); United States v. Coles, 101 F.3d 1076 (5th. Cir. 1996). The term "civil action" with respect to prison conditions means any civil proceedings arising under Federal law with respect to the conditions of confinement or the effects of actions by Government officials on the lives of persons confined in prison, but **does not** include **habeas corpus proceedings** challenging the fact or duration of confinement in prison. See - 18 U.S.C. § 3626(g)(2).

Petitioner(s) do not challenge prison conditions, but rather they challenge the BOP's rule revision that deprives it of legal discretion to designate certain offenders to community confinement facilities when performing its statutory duty to execute criminal sentences. It is well established that challenges to the "manner, location, or conditions of a sentence's execution" are proper subjects of a habeas corpus action under § 2241. See - Gonzalez v. United States, 150 F. Supp. 2d 236, 240 (D. Mass. 2001)(citing Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000). And as such, the statutory PLRA exhaustion requirement does not apply. See - Davis v. Fechtel, 150 F.3d 486, 490 (5th Cir. 1998) ("The PLRA thus does not apply to section 2241 proceedings"); West, 2003 WL 1119990, at *2 ("[T]he

explicit exhaustion requirements which are contained in ... the ... AEDPA ... and the ... PLRA do not apply to habeas petitions filed under 28 U.S.C. § 2241.").

Petitioner(s) now submit that notwithstanding the fact that the PLRA does not apply to Habeas Corpus petitions, pursuit of full administrative remedies in this case would be futile, because the BOP has announced a clear and inflexible policy..See - Iacaboni, 251 F. Supp. 2d at 1017 n. 1.

Petitioner(s) have for the sake of giving the defendant(s) the opportunity to correct their mistake in law, filed administrative remedies on the Institutional level to the Unit Team that originally made the erroneous classification decision by way of BP-8, which was denied, and petitioner(s) then appealed to the Warden - Michael A. Zenk by way of BP-9 which was also denied on _____,2004.[1.]

Petitioner(s) have done more than was required of them by law in an attempt to remedy this matter on an Institutional level, and the defendant(s) have maintained their position that their actions are in accordance with the law as they understand it from the Legal Counsel at the Department of Justice - Office of Legal Counsel to the United States Deputy Attorney General. Petitioner(s) now move for this matter to be heard because exhaustion is not required under §2241.

----------------------------------------------------------------

1./ Petitioner(s) Appendix contains a complete set of Inmate Remedy Forms which were filed with the Unit Team And Warden at Metropolitan Detention Center in Brooklyn, New York.

## CONCLUSIONS

A change in law has retroactive effect when it "attaches new legal consequence to events completed before its enactment". See - Landgraf v. USI Film Prods., 128 L.Ed 2d 229 (1994). The retroactive application of laws , under certain (but not all) circumstances , can work harm of constitutional significance. Specifically, such a practice can offend the principles of due process and the Constitution's proscription of ex post facto laws. Id. at 266. In this matter the Bureau of Prison's policy does both.

It is beyond dispute that the Bureau of Prison's recasting of §3621(b), which strips it of its discretion in determining an inmate's place of confinement, has the binding effect of law. The Deputy Attorney General's opinion to the Bureau of Prison trumps non-binding judicial recommendations, and therefore, the policy change is law because it binds the hands of the Bureau of Prison. The United State Supreme Court in Weaver v. Graham, 67 L.Ed 2d 17 (1981), held that "a law need not impair a 'vested right' to violate the ex post facto prohibition." Ashenazi, 246 F. Supp. 2d at 6. Rather the Weaver Court observed:

> Critical to relief under the Ex Post Facto,
> Clause is not an individual's right to less
> punishment, but the lack of fair notice and
> governmental restraint when the legislature
> increases punishment beyond what was prescribed
> when the crime was consummated.

Taking Weaver's cue, courts have found that "administrative rules that purport to correct or clarify a misapplied existing law" can violate the Ex Post Facto Clause. See - Knuck v. Wainwright, 759 F.2d 856, 859 (11th. Cir. 1985) (finding that the Department of Corrections policy change in "gain time" calculations, though interpretive, violated the Ex Post Facto Clause because it conflicted with 10 years of established practice and regulations".).

## CONCLUSION

The Fifth Amendment forbids the federal government from depriving a person of his right to life, liberty, or property without due process. United States Constitutional Amendment V. Among the numerous safeguards that due process principles provide is a protection against certain forms of retroactively applied laws. Due process "protects the interests in fair notice and repose that may be compromised by retroactive legislation" Landgraf, 511 U.S. at 266.

Petitioner(s) now submit that the Court should find that the petitioner(s) have demonstrated a clear likilihood of success on the merits. Improperly subjecting offenders to prison rather than to community confinement when they are due to be considered for such inflicts irreparable harm on them, their families, and their communities. Recognition of the Bureau of Prison's discretion to utilize community confinement inherent in the Bureau of Prison's pre-December 2002 policy poses no special burden on the government. And maintaining a full menu of appropriate punishment options is in the public interest. See - Utility Contracters Ass'n of New England, Inc. v.City of Worcester, 236 F. Supp. 2d 113, 117 (D. Mass. 2002) (laying out the above prerequisites for injunction).

FOR RELIEF WE PRAY